**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 4 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HOTCHALK, INC.,<br><br>    Plaintiff-Appellant,<br><br> v.<br><br>SCOTTSDALE INSURANCE CO.,<br><br>    Defendant-Appellee. | No.   16-17287<br><br>D.C. No.<br>4:16-cv-03883-CW<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilkin, District Judge, Presiding

Argued and Submitted February 13, 2018
San Francisco, California

Before: BEA and N.R. SMITH, Circuit Judges, and STATON,[**] District Judge.

Plaintiff-Appellant HotChalk, Inc. ("HotChalk") provides technology and support services to universities seeking to establish or expand their online education programs. These services primarily revolve around marketing the universities' online programs and recruiting students and faculty.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Josephine Staton, United States District Judge for the Central District of California, sitting by designation.

In 2014, former HotChalk employees filed a *qui tam* lawsuit against HotChalk on behalf of the federal government under the False Claims Act (the "FCA Lawsuit"). The FCA Lawsuit alleged that HotChalk violated federal regulations concerning the enrollment of students who received federal financial aid, including a ban on incentive compensation, and caused both those students and the universities with which HotChalk partnered to submit false claims to the federal government.

HotChalk tendered the claims in the FCA Lawsuit to its insurer, Scottsdale Insurance Company ("Scottsdale") under a directors and officers liability policy HotChalk had purchased (the "Policy"). Scottsdale declined coverage and refused to defend HotChalk in the FCA Lawsuit because the claims were excluded from coverage under the Policy's professional services exclusion.

HotChalk ultimately settled the FCA Lawsuit. Subsequently, HotChalk filed a complaint in California superior court against Scottsdale for breach of contract and breach of the duty of good faith and fair dealing. The complaint alleged that Scottsdale had a duty to defend and indemnify HotChalk in the FCA Lawsuit and sought damages for attorneys' fees and the amount HotChalk had paid to settle the FCA Lawsuit. Scottsdale removed the case to the federal district court for the Northern District of California on the basis of diversity jurisdiction.

Scottsdale filed a motion for judgment on the pleadings, arguing that the claims in the FCA Lawsuit were excluded from coverage by the Policy's

professional services exclusion. The district court agreed and granted Scottsdale's motion. HotChalk appeals the district court's decision.

We review an order granting judgment on the pleadings under Rule 12(c) de novo. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). The standard for granting judgment on the pleadings is identical to the standard for granting a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* Judgment on the pleadings should be granted when, and only when, taking all material factual allegations as true, the moving party is entitled to judgment as a matter of law. *Id.* Finding no error in the district court's order, we affirm.

In ruling on matters of California law,[1] we follow the rulings of the California Supreme Court and, in the absence of such a ruling, attempt to determine how the California Supreme Court would rule if presented with the issue at hand. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). When interpreting insurance policies, California courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18, *as modified on denial of reh'g* (Oct. 26, 1995). The expressed intent of the parties governs the meaning of

---

[1] Although this case was heard in federal court, it concerned a claim under California state law. In such circumstances, we apply federal procedural law, but state substantive law. *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003).

the policy and should be determined, "if possible, solely from the written provisions of the contract." *Id*. Exclusionary clauses should be interpreted narrowly in favor of coverage. *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 829 (2006). But even in exclusions, California courts ascribe words their plain meaning and give broad meaning to broad terms, such as "arising out of." *See id.*; *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328 (1999).

In this case, the Policy provided coverage for "claims" arising out of the "errors or omissions" committed by HotChalk's directors and officers. Scottsdale does not contest that the claims in the FCA Lawsuit are "claims" arising out of the "errors or omissions" of HotChalk's directors and officers. Instead, Scottsdale contends that even though the Policy would otherwise cover those claims, the professional services exclusion recited in the same Policy bars coverage.

The Policy's professional services exclusion applies to claims "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failing to render professional services." In the district court, HotChalk conceded that the services it provides to universities, including its recruitment services, are "professional services" within the meaning of the Policy and California law. As a result, the sole point of disagreement concerns whether the claims from the FCA Lawsuit "aris[e] out of . . . [HotChalk's] rendering or failing to render professional services."

4

We hold that the claims at issue in the FCA Lawsuit clearly arose out of HotChalk's professional services. The claims against HotChalk alleged that it caused false claims to be submitted to the Department of Education ("DOE"), thereby defrauding the federal government. HotChalk's alleged liability was not merely a matter of its employee compensation, as HotChalk argues. Rather, HotChalk's alleged liability derived from the fact that its professional services caused ineligible students and ineligible universities to submit claims for federal financial aid to the DOE.[2] As a result, the liability arose out of HotChalk's rendering of professional services and was therefore excluded from coverage.[3]

Because the district court did not err in concluding that the professional services exclusion barred coverage in this case, we **AFFIRM**.[4]

---

[2]   Unlike in *FoodPro International, Inc. v. Farmers Insurance Exchange*, 169 Cal. App. 4th 976, 986–92 (2008) and the other cases cited by HotChalk and its amicus, United Policyholders, the relationship between HotChalk's professional services and its alleged liability was not merely "incidental." Rather, the relationship between HotChalk's professional services and its alleged liability was direct and well within the plain language of the professional services exclusion at issue in this case.

[3]   HotChalk also argues that the district court's ruling eviscerates coverage under the Policy and "raises the question of whether there are any suits at all that would actually be covered under the Policy." BB at 33. However, the exclusion itself demonstrates that this is an overstatement. The exclusion specifically states that it does not apply to claims by HotChalk's "securities holders." Thus, at a minimum, the Policy covers HotChalk for claims related to professional services that are brought by holders of HotChalk's securities.

[4]   We hereby grant the motion of United Policyholders to file an amicus brief.